UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARISOL PAGAN,

       Plaintiff,

   v.

ERIC HOLDER, ATTORNEY GENERAL,
AND THE DEPARTMENT OF JUSTICE,
FEDERAL BUREAU OF PRISONS,


       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 07-4556
(JEI/AMD)

**OPINION**

**APPEARANCES:**

F. MICHAEL DAILY, JR., LLC
By:  F. Michael Daily, Jr., Esq.
    Amy B. Sunnergren, Esq.
216 Haddon Ave., Sentry Office Plaza Suite 106
Westmont, NJ 08108
      Counsel for Plaintiff

PAUL J. FISHMAN, UNITED STATES ATTORNEY
By: Jordan M. Anger, Esq.
970 Broad St., Suite 700
Newark, NJ 07102
      Counsel for Defendants


**IRENAS**, Senior District Judge:

Plaintiff Marisol Pagan ("Plaintiff") initiated this employment discrimination action against the Department of Justice, the Federal Bureau of Prisons and the United States Attorney General, Eric Holder.  Plaintiff alleges that she was discriminated against on the basis of her sexual orientation, age, sex and race, and that she was the victim of sexual

1

harassment and retaliation.  Pending before the Court is
Defendants' Motion for Summary Judgment.

**I.**

Since 1992, Plaintiff has been employed by the United States
Department of Justice, Bureau of Prisons, at the Federal
Correctional Institution at Fort Dix, New Jersey ("FCI").  (Defs'
56.1 Stat. ¶2)[1]  As a recreation specialist in the east compound
unit of FCI, Plaintiff can be assigned to either the gymnasium,
wellness center or hobby shop.  (Id. ¶4)  Plaintiff had been
assigned to the hobby shop for many years.  (Id. ¶7)  Following
the implementation of a rotation system in 2004, Plaintiff was
assigned to the gymnasium and wellness center and then back to
the hobby shop in 2009.[2]  (Id. ¶7, Pl's Resp. ¶4)[3]  The rotation
system was implemented by Brett Conley ("Conley"), supervisor of
recreation and Plaintiff's immediate supervisor.  (Defs' 56.1
Stat. ¶7c)

Although most of Plaintiff's allegations of discrimination

---

[1]  References to "Defs' 56.1 Stat." are to Defendants'
statement of undisputed material facts submitted in support of
their Motion.

[2]  Specifically, Plaintiff was assigned to the gymnasium
from Sept. 2004 to Sept. 2005, and then again from Sept. 2005 to
Sept. 2006.  From Sept. 2006 to Sept. 2007, Plaintiff was
assigned to the wellness center, followed by another two years in
the gymnasium.  In Sept. 2009, Plaintiff was assigned to the
hobby shop.  (Pl's Resp. ¶4)

[3]  References to "Pl's Resp." are to Plaintiff's Response to
Defendants' statement of undisputed material facts.

involve actions by Conley, her racial discrimination claim is based on a statement made in 1993 by the FCI warden upon Plaintiff's election as president of the union.[4]  Plaintiff alleges the warden said to her, "Congratulations, the Puerto Ricans are moving up in the world."[5]  (Id. ¶17)

Plaintiff alleges that Conley made a number of offensive comments about her sexual orientation.  He has allegedly referred to her as a "lesbian" and a "dyke," told inmates to "stay away from that lesbian," and expressed disapproval of her "lifestyle." (Id. ¶14).  In addition, at some point prior to 2000, Plaintiff believes Conley placed a bicycle handle on her desk made to resemble a "dildo"[6] with the words "eat me" written on it ("bicycle handle incident").  (Id.)  Plaintiff believes Conley was responsible for this incident because he appeared grinning at her door shortly after she found it.  (Id.)

Plaintiff alleges that Conley also demonstrated age-based animus towards her.  (Id. ¶15)  According to Plaintiff, after she

_____

[4]  Plaintiff served as the first President of the local union from 1993 to January 2002 and currently serves as a union steward.  (Defs' 56.1 Stat. ¶3)

[5]  Plaintiff also alleges that Conley made racially charged statements to an inmate, including his statement that "as a Caucasion [sic] American, I am in the minority here, and I will not be pressured or squeezed out of my position, by a Puerto Rican lesbian."  (Pl's Resp. ¶17)  However, these statements are not properly before the Court for the reasons discussed *infra*, n. 11.

[6]  This is the term used by the parties.

3

had a hysterectomy in 2002, Conley told her she was "walking like
an old lady." (Id. ¶15) Plaintiff alleges that Conley stated
"I'm kidding" at the time he made the comment.[7] (Id.)

Plaintiff alleges that she suffered retaliation following
her August 7, 2004 request for a transfer due to "continuous
years of discriminatory harasssment [sic] and retaliation from
Recreation Supervisors." (Pl's Resp. ¶19) In September 2004,
Plaintiff was rotated to the gymnasium pursuant to Conley's

---

[7] Plaintiff has alleged a number of other incidents of
harassment: (1) It took over three weeks for the prison to
respond to her complaint of a malfunctioning air conditioner; (2)
She was not told to go home early during a snow storm; (3) She
was initially denied leave on September 5, 2004, but was later
allowed to take it; (4) She was arbitrarily denied leave on
February 8, 2005; (5) Conley asked her physician about her
medical status while she was out of work in September 2004; (6)
Conley did not give her an annual foreign language award in
February 2005, although she did receive the award before that
date and again after that date; (7) Conley tried to give
Plaintiff her performance evaluation while she was speaking with
inmates and when she refused his order to step into his office he
"shoved her evaluation in her face;" (8) Plaintiff's specific
requests for training were denied, although she was sent to other
trainings; (9) She was threatened with insubordination because of
the tone of her email; (10) Conley grinned while another employee
verbally chastised Plaintiff, though he intervened and ended the
meeting; (11) Conley talked to inmates about Plaintiff; (12) Two
requests for transfer out of the Recreation Department were
ignored; (13) Plaintiff was accused of failing to respond to a
page; (14) She was accused of lack of communication because she
provided hand-written reports rather than computer-generated
email reports; (15) Her inmates were not paid for serving as
referees; (16) She was denied her requested full eight hours of
official time to prepare her EEOC complaint, although she was
granted four hours and told she could request more if needed;
(17) Plaintiff was threatened with disciplinary action when she
refused to end a phone call with a union steward about requesting
representation when directed to by her supervisors, with whom she
was meeting. (Defs' 56.1 Stat. ¶¶21-48)

newly-instituted rotation system.  (Defs' 56.1 Stat. ¶7)
Plaintiff contends that her rotation out of the hobby shop where
she had worked for many years constituted retaliation and further
evidence of discrimination.[8]  (Id. ¶7b)  Plaintiff did not like
working in the gymnasium because she would often work alone with
over one hundred inmates.  (Id. ¶25c)  However, all recreational
specialists routinely worked alone in the gymnasium.  (Id.)

Plaintiff's union filed a grievance to protest her rotation
from the hobby shop, but the rotation was upheld.  (Id.)  Despite
this, Plaintiff vowed to fight Conley on the rotation.  (Id.)
After her rotation to the gymnasium, Plaintiff ignored three
requests to remove her belongings from the hobby shop.  (Id.
¶25b)  On October 20, 2004, while removing her belongings,
Plaintiff suddenly became ill with chest pains and was
transported via ambulance to the hospital.  (Id. ¶30)  Her doctor
diagnosed her with "severe panic attacks and
depression...stemming from work related stress."[9]  (Anger Dec.

_____

[8]  Plaintiff contends that retaliation also took the form of
"attempts of intimidation, attempts to turn inmates against you
and recognizing that you were being considered an 'outsider' by
your coworkers, which created a reasonable fear of physical
attack by inmates...."  (Pl's Brief in Opp. 12)  However, there
is no evidence in the record to support Plaintiff's conclusory
allegations.

[9]  Plaintiff was marked absent without leave ("AWOL") for
two days during this period.  (Defs' 56.1 Stat. ¶30)  However,
after obtaining an attorney in the matter, Plaintiff was
permitted to carry a negative balance on her sick leave and the
AWOL status was removed.  (Id.)

Ex. G)

On November 2, 2004, Plaintiff filed her first Equal
Employment Opportunity Commission (EEOC) complaint.[10] (Defs'
Rule 56.1 Stat. ¶7a)  In it she alleged discrimination based on
her status as a "Hispanic Female Lesbian."  (Anger Dec. Ex. D)
Plaintiff reported a series of incidents of discrimination by
Conley primarily regarding his alleged discriminatory intent to
remove Plaintiff and her belongings from the hobby shop
permanently.  (Id.)  Notably, Plaintiff did not report in her
EEOC complaint the warden's 1993 "moving up in the world"
comment, the bicycle handle incident, or Conley's comment that
she was "walking like an old lady."  (Anger Dec. Ex. D)

On February 28, 2005, Plaintiff was notified by the warden
that an accommodation had been made for stress by placing
Plaintiff and Conley in different compounds.  (Defs' Rule 56.1
Stat. ¶32)  Despite this separation, Conley frequently appeared
in and wandered through Plaintiff's compound.  (Id.)

On September 24, 2007, Plaintiff initiated this action.
(Id. ¶11)  On January 23, 2009, Plaintiff filed a motion to amend
to consolidate two EEOC complaints into her pending action in
this Court.  (Id. ¶12)  This Court granted her motion on August
28, 2009, and Plaintiff filed an Amended Complaint on October 27,

---

[10]  Plaintiff subsequently filed four or five EEOC
complaints relating to her employment with FCI.  (Defs' 56.1
Stat. ¶10)

2009.  (Id.)  Defendants' filed the instant Motion for Summary
Judgment on March 12, 2010.


## II.

"[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P.
56(c)).  In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*,
794 F.2d 860, 864 (3d Cir. 1986).  The role of the Court is not
"to weigh the evidence and determine the truth of the matter, but
to determine whether there is a genuine issue for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).


## III.

Plaintiff alleges one count under the Age Discrimination in
Employment Act ("ADEA"), and five counts under Title VII of
sexual harassment, retaliation, and discrimination based on race,
sex, and sexual orientation.

7

## A. Discrimination Based on Race

It is well established that federal employees who believe they are the victims of employment discrimination must comply with administrative remedies before filing a civil action in federal district court. *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976); *see also Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997). Failure to comply with the administrative remedies renders an action time barred much like a statute of limitations. *See Velazquez-Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir. 2000); *Hornsby v. U.S. Postal Service*, 787 F.2d 87, 89 (3d Cir. 1986).

The administrative remedies require that the employee contact an EEOC counselor within 45 days of the alleged discriminatory conduct. *See* 29 C.F.R. § 1614.105(a)(1). If the matter is not informally resolved, the employee must file a formal complaint with the EEOC. *See* 29 C.F.R. § 1614.106(b); *see also Robinson*, 107 F.3d at 1020-21 (administrative exhaustion for Title VII requires "consultation with an agency counselor and filing a formal EEOC complaint within the required times"). If the employee is dissatisfied with the agency's final decision or if the decision was not issued within the prescribed period, then the employee may commence an action in district court. *See* 29 C.F.R. § 1614.107. If the employee files suit in district court, only those claims that are "fairly within the scope of the prior

8

EEOC complaint, or the investigation arising therefrom" are considered to have been exhausted. *Moss v. Potter*, 2007 WL 2900551, at *2 (3d Cir. Oct. 3, 2007) (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984)).

Plaintiff's race claim is based on a single statement made to Plaintiff in 1993 by the warden.[11]  Plaintiff did not consult

---

[11]  Plaintiff submitted additional evidence of racial discrimination with her Brief in Opposition to Defendants' Motion for Summary Judgment.  Specifically, Plaintiff included a handwritten statement by inmate Harvey Ziskis and a 2005 affidavit of correctional counselor, Iris Rivera.

Ziskis states that during two September 2004 meetings with Conley, Conley made racially charged statements about Hispanics in general and Plaintiff in particular.  (Sunnergren Dec. Ex. G)  However, Ziskis' statement is not properly before the Court.  It is neither a sworn affidavit nor an unsworn declaration made under penalty of perjury, pursuant to 28 U.S.C. § 1746.  Accordingly, it cannot be considered on a motion for summary judgment.  *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1305-06 (5th Cir. 1988); *United States v. Branella*, 972 F.Supp. 294, 299-300 (D.N.J. 1997).

The affidavit of Iris Rivera is also not admissible evidence.  In her affidavit, Rivera recounts how two inmates complained to her that they were fired by Conley because they were Hispanics working for Plaintiff.  (Sunnergren Dec. Ex. Q at 8-9)  However,  the affidavit is not based on Rivera's personal knowledge and contains multiple levels of hearsay; therefore, it cannot be considered on a motion for summary judgment.  Fed. R. Civ. P. 56(e)(1) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(hearsay statements not admissible at trial cannot be considered on summary judgment motion).

Even if it were considered, Plaintiff cannot establish a *prima facie* case of discrimination on the basis of race, which requires that Plaintiff establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) and circumstances exist that give rise to an inference of unlawful discrimination.  *See Vernon v. A & L Motors*, 2010 WL

an EEOC counselor within 45 days after this statement was made. Plaintiff did not even mention this incident in her November 2004 EEOC complaint.  Therefore, Plaintiff has failed to exhaust her administrative remedies with respect to the warden's statement and it is not properly before the Court.  Since Plaintiff has failed to exhaust her administrative remedies, the Court will grant summary judgment in favor of Defendants on Plaintiff's racial discrimination claim.

### B. ADEA Claim

The regulations mandating timely exhaustion of administrative remedies to claims under Title VII are also applicable to claims under the ADEA.  29 C.F.R. §1614.103(a), 105(b); see also *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.4 (3d Cir. 1994).

Plaintiff's ADEA claim is based on Conley's statement in 2002 that she was "walking like an old lady."  Plaintiff neither consulted an EEOC counselor within 45 days, nor reported the incident on her November 2004 EEOC complaint.[12]  Therefore, the

---

2089640, at *2 (3d Cir. May 26, 2010). Plaintiff has failed to allege an adverse employment action.  *See infra* pages 14-16.

[12]  Plaintiff has also plainly failed to make out a *prima facie* case of age discrimination, which requires that Plaintiff establish that (1) she is over 40, (2) is treated differently than sufficiently younger co-workers to create an inference of age discrimination, and that (3) she suffered an adverse employment action.  *See Monaco v. American General Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2000).  The adverse employment action must be made solely on the basis of plaintiff's age.  *See Gross*

Court will grant summary judgment in favor of Defendants on
Plaintiff's ADEA claim.

### C. Discrimination Based on Sexual Orientation

Title VII of the Civil Rights Act of 1964 makes it unlawful
for an employer "to discriminate against any individual . . .
because of such individual's race, color, religion, sex, or
national origin."  42 U.S.C. § 2000e-2(a)(1).  Discrimination
based on failure to conform to gender stereotypes is cognizable
discrimination on the basis of sex under Title VII.  *Prowel v.
Wise Business Forms, Inc.*, 579 F.3d 285, 290-91 (3d Cir.
2009)(citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).
However, "Title VII does not prohibit discrimination based on
sexual orientation."  *Bibby v. Philadelphia Coca Cola Bottling
Co.*, 260 F.3d 257, 261 (3d Cir. 2001).

Plaintiff alleges that Conley made a number of offensive
comments about her sexual orientation, including calling her a
"dyke," and a "lesbian," and making references to her
"lifestyle."  (Defs' 56.1 Stat. ¶14) Plaintiff attempts to
characterize her allegations as discrimination on the basis of
sex rather than sexual orientation.  Plaintiff's Opposition Brief

_____

*v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2352 (2009)(The
ADEA does not support mixed-motive actions where age-based
discrimination is not the sole cause of an adverse employment
decision). Plaintiff has not alleged that she was treated
differently than younger co-workers, and she has not identified
an adverse employment action that was taken solely on the basis
of her age.

explains: "Pagan has alleged that Conley state [sic] to her that he did not like her lifestyle, which she believed reference [sic] her sexual orientation - that she did not comply with a gender stereotype. Pagan mis-identified the issue as sexual orientation, however the correct identification would be gender stereotyping." (Pl's Opp. Br. at 19)

This is a hollow attempt to amend the Complaint through briefing and recast a sexual orientation claim as a gender stereotyping claim. Plaintiff has offered no evidence that she behaved in a stereotypically masculine manner and that the harassment she suffered was based on her non-conformity with gender norms instead of her sexual orientation. Moreover, Plaintiff's Amended Complaint includes separate counts for discrimination on the basis of sex and sexual orientation. There is simply no basis to infer from the Amended Complaint that Conley's comments were because of Plaintiff's sex and not, as she alleges, because of her sexual orientation.

The Court will not permit Plaintiff to bootstrap protection for sexual orientation into Title VII by re-packaging her sexual orientation claim as gender stereotyping. *Prowel*, 579 F.3d at 292; *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2nd Cir. 2005). Accordingly, the Court will grant Defendants' Motion for Summary Judgment on Plaintiff's sexual orientation claim.

### D.  Discrimination Based on Sex

Title VII of the Civil Rights Act of 1964 prohibits workplace discrimination because of an individual's sex, *see* 42 U.S.C. § 2000e-2(a)(1).

The analysis of a Title VII action with no direct evidence of discrimination follows the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973). First, the plaintiff must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) circumstances exist that give rise to an inference of unlawful discrimination. *Vernon v. A & L Motors*, 2010 WL 2089640, at *2 (3d Cir. May 26, 2010). Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the alleged discriminatory action. *McDonnell Douglas*, 411 U.S. at 802. Once the defendant does this, then plaintiff must present evidence that the proffered reason is pretextual. *Id.* at 804.

Plaintiff's sex discrimination claim depends on her allegation made to the EEOC investigator in 2005 that she was the only member of the recreation staff not to be trained and certified as a personal trainer. Plaintiff alleges that she was not given this opportunity because Conley told her "that's a guy

13

position" and "all about lifting weights and exercising.  That's
for the guys." (Sunnergren Dec. Ex. C at 35)[13]  Plaintiff has
failed to establish a *prima facie* case because she did not
present evidence that she suffered an adverse employment action.

An adverse employment action is "a significant change in
employment status, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a
decision causing a significant change in benefits."  *Durham life*
*Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999)(quoting
*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761
(1998)).  An adverse employment action may also be found where an
employee's earning potential has been substantially decreased and
a significant disruption to her working conditions results.  *Id.*
at 153.

Plaintiff has not alleged that she has been fired,
suspended, demoted, denied a requested promotion, or suffered any
other loss of pay.  Instead, Plaintiff details a series of
workplace slights and petty grievances, including, *inter alia*,
denied requests for days of annual leave, a three week delay in

---

[13]  Although the record includes this quote, it does not
establish who made this comment.  The relevant page of
Plaintiff's February 8, 2005 testimony to the EEOC investigator
is missing from Exhibit C.  Plaintiff asserts in her Response to
Defendant's 56.1 Stat. that Conley made the statement.  (Pl's
Resp. ¶16)  Despite the fact that Plaintiff cites to a non-
existent exhibit (Pl's Exhibit F) with an incorrect date (January
8, 2005), the Court assumes Plaintiff's statement to be correct.

14

repairing an air conditioner, working alone in the gymnasium,
having her personal belongings boxed up and removed from her
former work station, supervisory reports of her failure to comply
with policies, and not being told to go home early in a snow
storm.[14]  These allegations, taken individually or collectively,
do not constitute an adverse employment action.[15]  *See, e.g.,
Clayton v. Pennsylvania Dept. of Welfare*, 304 Fed. Appx. 104,
106-07 (3d Cir. 2008)(plaintiff's complaints of reduced on-call
time, threat of furlough, change of work schedule, moved mailbox,
denied bonus, removal of furniture from office, and failure to
timely respond to grievances did not amount to adverse employment
action); *Nagel v. RMA*, 513 F.Supp. 2d 383, 391 (E.D.Pa.
2007)(heated meeting with supervisor who made performance
criticisms followed by tense and uncomfortable working
environment is not adverse employment action); *Mihalko v. Potter*,

---

[14]  *See supra* note 7.

[15]  Plaintiff argues that she "suffered an adverse
employment action when she was charged with being AWOL while out
on medical leave due to a panic attack."  (Pl's Opp. 14)
However, the AWOL charge was removed once Plaintiff hired an
attorney in the matter.  (Defs' 56.1 Stat. ¶30)  Plaintiff
acknowledged that she needed to request permission to carry a
negative balance on her sick leave and once she made such a
request, it was granted.  (Id. ¶30a, Anger Dec. Ex. B at 209-10)
Given the prompt resolution of the AWOL issue and the fact that
it did not change or alter Plaintiff's employment in any way, it
cannot be an adverse employment action.  *See Rivers v. Potter*,
2007 WL 4440880, at *4-5 (D.N.J. Dec. 18, 2007)(concluding that
temporary letters of reprimand are not adverse employment actions
because they are not permanently affixed to the employment file,
and do not change or alter employment status).

2003 WL 23319594, at *2,6 (W.D.Pa. Dec. 12, 2003)(denying leave, issuing warnings, monitoring plaintiff at work, forcing plaintiff to work in unheated room, ordering other employees not to speak to plaintiff do not amount to adverse employment actions).

Furthermore, the denial of Plaintiff's request for training as a personal trainer[16] does not constitute an adverse employment action.  There is no evidence that Plaintiff's work suffered as a result of her lack of training as a personal trainer or that such training was necessary for advancement in status or pay.  *See Rogers v. Alternative Resources Corp.*, 440 F.Supp. 2d 366, 375 (D.N.J. 2006)(granting summary judgment where plaintiff could not establish that a certain level of training was required for promotion, retention or financial benefit); *Cf. Hodgkins v. Kontes Chemistry & Life Sci. Product*, 2000 WL 246422 at *19 (D.N.J. March 6, 2000)(denying summary judgment where training was necessary for job advancement and pay increases).

Because Plaintiff cannot demonstrate that she suffered an adverse employment action, summary judgment will be granted for Defendants on Plaintiff's discrimination on the basis of sex claim.

### E.  Sexual Harassment

Title VII of the Civil Rights Act of 1964 prohibits

---

[16]  Plaintiff made a formal request for training as a personal trainer in September, 2004.  (Sunnergren Dec. Ex. M at 312)

16

workplace discrimination because of an individual's sex, *see* 42
U.S.C. § 2000e-2(a)(1).[17]  An employer will be liable for hostile
work environment sexual harassment when a plaintiff proves that:
(1) she suffered intentional discrimination because of her sex;
(2) the discrimination was pervasive and regular; (3) the
discrimination detrimentally affected her; (4) the discrimination
would have detrimentally affected a reasonable person of the same
sex, in like position; and (5) a basis for respondeat superior
liability.  *Kunin v. Sears Roebuck Co.*, 175 F.3d 289, 293 (3d
Cir. 1999) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1482
(3d Cir. 1990)).

       The Supreme Court has made it clear that "not all workplace
conduct that may be described as 'harassment'" is actionable
under Title VII.  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S.
57, 67 (1986).  Sexual harassment is only actionable if the
discriminatory conduct is "sufficiently severe or pervasive to
alter the conditions of [the victim's] employment and create an
abusive working environment."  *Id.* (internal quotations marks
omitted).  The "'mere utterance of an ethnic or racial epithet

---

       [17]  Title VII prohibits two types of sexual harassment: quid
pro quo harassment and hostile work environment.  Quid pro quo
harassment occurs when sexual advances or sexual favors are made
a condition of employment or when the submission to or rejection
of such conduct is the basis of an employment decision.  *See* 29
C.F.R. § 1604.11(a)(1)-(2).  Plaintiff has not made any
allegations of a quid pro quo claim; therefore, the Court will
construe her sexual harassment count as a hostile work
environment claim.

which engenders offensive feelings in an employee' would not affect the conditions of employment to a sufficiently significant degree to violate Title VII." *Meritor*, 477 U.S. at 67 (quoting *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)).  In assessing a hostile work environment claim, district courts should consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

Plaintiff has failed to make out a *prima facie* case of hostile work environment sexual harassment.  First, Plaintiff admits that she "could point to no comment or action within the statutory time period that could be defined as sexual harassment."[18]  (Pl's Resp. ¶18)  As discussed *supra* in Section III.C, Conley's alleged statements about Plaintiff's "lifestyle" and his alleged references to Plaintiff as a "lesbian" and "dyke" are not discrimination because of sex.  Although Conley's alleged statement that Plaintiff could not be a personal trainer because

---

[18]  A reasonable finder of fact could find that the bicycle handle incident could support a sexually offensive work environment; however, as Plaintiff acknowledged, this incident is not an actionable issue as it occurred prior to the year 2000 and was not reported to the EEOC.  *See supra* pages 8-10 (discussion of administrative exhaustion requirement).

of her gender is discrimination because of sex, it is not
sufficiently severe or pervasive so as to create a hostile work
environment.[19]  Therefore, Plaintiff has failed to establish a
*prima facie* case.

Accordingly, the Court will grant summary judgment in favor
of Defendants on Plaintiff's sexual harassment claim.

### F.  Retaliation

Title VII prohibits retaliation for opposing an unlawful
employment practice.  *See* 42 U.S.C. § 2000e-3.  To establish a
*prima facie* case of retaliation under Title VII, a plaintiff must
prove that (1) she engaged in protected activity, (2) an employer
took an adverse action against her, and (3) there was a causal
connection between her participation in the protected activity

---

[19]  In her Opposition Brief, Plaintiff appears to be
alleging a hostile work environment claim generally in addition
to a hostile work environment claim resulting solely from sexual
harassment.  Count six of Plaintiff's Amended Complaint is a
claim of sexual harassment, but the Amended Complaint contains no
count for a hostile work environment on any other basis.
The whole of Plaintiff's argument in support of the general
hostile work environment claim is as follows: "[Plaintiff] found
the workplace to be hostile and abusive, as evidenced by her
panic attack.  It caused a tangible psychological injury.  An
injury that cause [sic] [Plaintiff] to be out of work for
approximate [sic] three and one-half months."  (Pl's Opp. 18)
Plaintiff's subjective belief that the work environment is
hostile along with the mere fact of her panic attack are
insufficient to support a hostile work environment claim.  *See*
*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)(To be
actionable under Title VII, hostile work environment must be
subjectively and objectively abusive).  To the extent that
Plaintiff alleges a hostile work environment claim separate from
her sexual harassment claim, the Court grants summary judgment in
favor of Defendants on such a claim.

and the adverse action.  *Wilkerson v. New Media Tech. Charter School, Inc.*, 522 F.3d 315, 320 (3d Cir. 2008).

The adverse action must be "materially adverse" such that it would "dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  This standard is intended to distinguish significant from trivial harms.  *Id.*  "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  *Id.*

As discussed *supra* in Section III.D, Plaintiff has failed to allege an adverse employment action, let alone a materially adverse action.  Accordingly, summary judgment will be granted for the Defendants on Plaintiff's retaliation claim.

## IV.

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.

Dated: October 5, 2010

s/Joseph E. Irenas
**JOSEPH E. IRENAS, S.U.S.D.J.**

20